IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**DEREK ROBERT GLASSER, on his own behalf
and as next friend and primary residential
custodial parent of C.D.G., a minor,**

      Plaintiff,

**v.**                                                    **Case No. 2:15-cv-01411**

**KAREN BOWLING, Secretary of
Health and Human Resources, et al.,**

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is a Motion to Dismiss filed by defendants Sgt. M. Davita and Colonel Jay Smithers (ECF No. 11), and a Motion to Dismiss filed by defendants Karen Bowling, Casey Adkins and Melissa McCumbers (ECF No. 13). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On February 3, 2015, the plaintiff filed a Complaint (ECF No. 2) against the defendants in both their official and individual capacities. The Complaint alleges that, on or about February 8, 2013, in Clay County, West Virginia, the West Virginia State Police and the West Virginia Department of Health and Human Resources filed a false abuse and neglect petition against the plaintiff, despite the fact that there was no probable cause

for the same.  (ECF No. 2 at 4).  The Complaint further alleges that, as a result of that petition, the plaintiff was falsely criminally charged and wrongfully incarcerated for five and a half months.  (*Id.*)  The plaintiff further alleges that, during that time, his minor daughter was returned to the custody of her mother in Mexico, where she has remained, and that the plaintiff had "almost all of his personal property stolen," while he was "deprived of his liberty."  (*Id.*)  The plaintiff contends that he was "targeted because of his bi-racial child (Hispanic and Caucasian) and thus bi-racial marriage, his religious beliefs expressed by his actions in residing in a perceived Christian community development, and opinions expressed on the internet."  (*Id.*)

The plaintiff further alleges that all criminal charges were subsequently dismissed, but does not state when that occurred.  (*Id.*)  He further contends that he has "suffered public humiliation, including but not limited to battery inflicted upon him by strangers, intentional and negligent infliction of emotional distress, [and] the loss of the company of his daughter (whose life has materially suffered by being sent back to Mexico and out of the United States of America)."  (*Id.*)  The plaintiff further contends that the conduct of the defendants, who were acting under color of state law, violated his rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  Thus, although the plaintiff does not cite to 42 U.S.C. § 1983, it appears that his Complaint is brought thereunder.

The plaintiff's Complaint further alleges that, as a result of being incarcerated, he was "unable to pay his automobile insurance in the State of Florida" and had his Florida driver's license suspended.[1]  The Complaint further alleges that the plaintiff's minor

---

[1] The plaintiff further contends that he was unable to transfer his license from Florida to West Virginia when he moved because he was living in a "very rural" area and he was "snowed in part of the time."  (ECF No. 2 at 5).  The plaintiff further asserts that, while he was incarcerated, his vehicle registration expired

daughter, C.D.G., was subjected to a "rape kit" despite her denials that the plaintiff had sexually abused her and, consequently, the plaintiff asserts that C.D.G. was "subjected to outrageous acts of the Defendants, humiliation and emotional distress negligently or intentionally inflicted upon her." (*Id.* at 5). The plaintiff contends that the conduct of the defendants violated clearly established laws of which a reasonable person would have known and that such conduct was "fraudulent, malicious and otherwise oppressive." (*Id.*) The plaintiff's Complaint seeks $50 million in damages and the "immediate return" of his daughter at the State's expense. (*Id.* at 7).

Attached to the Complaint is a narrative that appears to be an excerpt from a police report dated February 25, 2013. The undersigned cannot read the signature on the narrative, which states:

> On Thursday, February 7, 2013 at approximately 1100 hrs. the undersigned officer was contacted by Clay County Prosecuting Attorney Jim Samples in reference to a five-year-old female living in unlivable conditions in the Beechy Ridge area of Clay County. The female was enrolled in school at the Clay County elementary school by her father Derek Robert Glasser. Upon Mr. Glasser and [sic] enrolling the juvenile in the school it was thought to be weird that he had all the appropriate paperwork and documents. The school officials later learned that the juvenile was living in a bus with no heat, water, or any food. At this time the undersigned officer set up a safety interview of the juvenile with Cpl. T.M. Davita with the West Virginia State Police Crime Against Children Unit.
>
> This investigation is currently being handled by Cpl. T.M. Davita with the West Virginia State Police Crimes Against Children Unit. A copy of her report will be attached to this report upon receipt.
>
> Status of this investigation is considered complete.

(ECF No. 2 at 6).

---

and, upon his release, he had no means of transportation to obtain work and, thus, cannot pay child support. (*Id.*) The plaintiff appears to be attributing these issues to the conduct of the defendants as well.

The plaintiff filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1). Accordingly, this matter was subject to the initial screening requirements of 28 U.S.C. § 1915(e)(2)(B). Due to the workload of the court, and no fault of the plaintiff, such screening was not completed and service of process was not ordered upon the defendants until October 26, 2016.

On November 21, 2016, defendants Davita and Smithers filed their Motion to Dismiss (ECF No. 11) and a Memorandum of Law in support thereof (ECF No. 12). On November 23, 2016, defendants Adkins, Bowling and McCumbers filed their Motion to Dismiss (ECF No. 13) and a Memorandum of Law in support thereof (ECF No. 14). Both motions assert that the Complaint should be dismissed because: (1) it was not served within the time period set forth in Rule 4(m) of the Federal Rules of Civil Procedure[2]; (2) there is no relief available against the defendants in their official capacity because they are not "persons" under section 1983; (3) there can be no recovery against the defendants based upon a theory of *respondeat superior*; (4) the Complaint generally fails to state a claim upon which relief can be granted; and (5) all claims brought by Derek Robert Glasser as "next friend" of C.D.G. must be dismissed because Mr. Glasser has a personal interest in the outcome of this litigation and, thus, is disqualified from serving as a "next friend" under West Virginia law. The plaintiff has not responded to either motion.

## STANDARD OF REVIEW

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can

---

[2] Defendants Adkins and McCumbers also correctly assert that service of process on them was not properly perfected because delivery of the certified mail packages containing their summonses was not restricted for delivery to each defendant and they did not personally sign for those packages. (ECF No. 14 at   As will be addressed *infra*, this was an error by the Court Clerk's Office which should not be attributed to the indigent pro se plaintiff.

4

be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court further explained its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * * In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A. The plaintiff should not be held responsible for the issues with service of process in this matter.

All of the defendants herein have moved for dismissal of the Complaint pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. At the time the plaintiff filed his Complaint, Rule 4(m) provided as follows:

> Time Limit for Service - If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice or order that service be be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m).[3]

The United States Court of Appeals for the Fourth Circuit has interpreted Rule 4(m) to require dismissal of a complaint that has not been served upon a defendant within the Rule 4(m) period, absent a showing of good cause. *Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995). In the instant case, because the plaintiff sought to proceed *in forma pauperis*, the court was required to screen the plaintiff's Complaint under 28 U.S.C. § 1915(e)(2)(B) to determine if it was frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary damages from defendants who are immune therefrom. Due to the court's workload, the screening was not conducted and service of process was not ordered until October 27, 2016.

Furthermore, because the plaintiff is proceeding *in forma pauperis*, an officer of the court is responsible for perfecting service of process on the plaintiff's behalf. *See* 28 U.S.C. § 1915(d). In the instant matter, the court ordered, in accordance with Rule 4(e)(1) of the Federal Rules of Civil Procedure, and incorporating Rule 4(d)(1)(D) of the West Virginia Rules of Civil Procedure, that the summonses be served by the Clerk of Court by certified mail, return receipt requested and with delivery restricted to the addressee. The summonses were issued and service was attempted in that manner. However, due to no fault of the plaintiff, the restricted delivery box was not checked and the individual summonses were signed for by persons other than the individual defendants. Defendants

---

[3] Effective December 1, 2015, the period for service under Rule 4(m) was reduced from 120 to 90 days.

Casey Adkins and Melissa McCumbers have asserted that service of process was ineffective on this basis.

As noted above, pursuant to 28 U.S.C. § 1915(d), officers of the court were responsible for performing service of process for the plaintiff herein. Consequently, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff should not be held responsible for the deficiencies in service of process and that there is good cause to extend the time period for service of process to remedy such deficiencies. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the defendants' Motions to Dismiss on this basis.

### B. The Complaint fails to state a claim upon which relief can be granted against the defendants in their official capacities.

The defendants have also moved for dismissal of the claims against them in their official capacities. The Memoranda of Law in support of their Motions to Dismiss assert that the defendants, in their official capacities as employees of either the West Virginia Department of Health and Human Resources ("WVDHHR") or the West Virginia State Police ("WVSP"), are not "persons" who can be sued under 42 U.S.C. § 1983[4] and that the plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment to the United States Constitution. (ECF No. 12 at 5-7; ECF No. 14 at 6-7).

42 U.S.C. § 1983, provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

---

[4] The undersigned notes that both of the Memoranda of Law cite to 18 U.S.C. § 1942, which appears to be a typographical error. (ECF No. 12 at 5; ECF No. 14 at 6). The undersigned believes that the defendants intended to cite 42 U.S.C. § 1983.

7

42 U.S.C. § 1983.  While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

The defendants argue that the Supreme Court and the United States Court of Appeals for the Fourth Circuit have found that "neither a State not its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Preval v. Reno*, 203 F.3d 821 (4th Cir. 2000)(unpublished).  (*Id.* at 4.)

In *Will*, the Supreme Court stated:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.  [Citations omitted].

491 U.S. at 71.  The plaintiff has not contested the defendants' argument on this basis.

Additionally, absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment of the United States Constitution.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).  Furthermore, the Eleventh

8

Amendment bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980); *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Thus, it is well-established that state officials are immune from suits for monetary damages in their official capacity.

Among other forms of relief, the plaintiff is seeking retroactive monetary relief from State officials in this matter, which is barred by the Eleventh Amendment of the United States Constitution.[5] For this reason, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which monetary relief can be granted against all of the defendants in their official capacities. Accordingly, it is respectfully **RECOMMENDED** that the defendants' Motions to Dismiss be **GRANTED** as to the plaintiff's claims for monetary damages against the defendants in their official capacities.

### C. The plaintiff's Complaint fails to state a plausible claim for relief against any of the defendants in their individual capacities.

The defendants further assert that, for a number of reasons, the plaintiff's Complaint fails to state a claim upon which relief can be granted against them in their individual capacities as well. The undersigned will address these reasons in turn.

First, the plaintiff's Complaint fails to specify any conduct by the individual defendants that would give rise to his alleged constitutional violations. As noted in both Memoranda of Law filed in support of the defendants' motions:

> The only claim in the text of the complaint that even remotely could be characterized as relating to . . . these defendants is the claim that ". . . the West Virginia State Police and the West Virginia Department of Health and

---

[5] The undersigned notes that the plaintiff also seeks injunctive relief in the form of "the immediate return of my daughter at the expense of the State of West Virginia."

> Human Resources violated the Plaintiff's civil and constitutional rights by filing a false Petition alleging abuse and or neglect . . ."

(ECF No. 12 at 7; ECF No. 14 at 8). Thus, the defendants assert that, absent any factual allegations relating directly to a specific defendant, it is unclear if the Complaint is making a claim of direct liability or supervisory liability as to any of these defendants. Moreover, because the Complaint only specifically references the WVDHHR and the WVSP, and not any conduct by the individual defendants, the defendants contend that it is apparent that the plaintiff seeks to hold the individual defendants liable under a theory of vicarious liability, or *respondeat superior*, which is impermissible under section 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

The defendants further assert that the plaintiff's Complaint does not sufficiently allege any conduct that gives rise to a plausible violation of the First, Fourth, Fifth or Fourteenth Amendments. Beginning with the plaintiff's First Amendment claim, both Memoranda of Law base this claim on the plaintiff's allegation that "he was targeted because . . . [of] his religious beliefs expressed by his actions in residing in a perceived Christian community development, and opinions expressed in posts on the internet." (ECF No. 2 at 4; ECF No. 12 at 9; ECF No. 14 at 10). Both Memoranda further state:

> A plaintiff suing under section 1983 must establish three elements in order to prove a First Amendment retaliation claim. First, the plaintiff must demonstrate that his or her speech was protected. *See Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990). Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (stating that "a showing of adversity is essential to any retaliation claim"). Third, the plaintiff must demonstrate that a causal relationship exists between the protected speech and the defendant's retaliatory action. *See Huang*, 902 F.2d at 1140.

(*Id.*)

The defendants contend that the plaintiff has failed to allege that any of the defendants were aware of his religious beliefs or his internet postings. (*Id.*) They further assert that the plaintiff has not specifically alleged whether he was "targeted" by any particular defendant, and has not identified the specific content of any speech that was allegedly targeted. (*Id.*) Thus, both Memoranda further assert that "these defendants cannot identify whether the speech was constitutionally protected." (*Id.*) The defendants further assert that the plaintiff has not alleged that his speech was chilled by their conduct.

Furthermore, the defendants contend that the plaintiff cannot demonstrate a violation of his First Amendment right to the free exercise of his religion because he has not specified any conduct by the individual defendants that inhibited his ability to practice the religion of his choice. Rather, the plaintiff only generally asserts that the he was "targeted" because of the "perceived Christian community" in which he resided. The defendants maintain that these conclusory allegations are insufficient to state a plausible First Amendment claim.

The defendants further assert that the plaintiff's Complaint does not plausibly establish a violation of his rights under the Fourth, Fifth or Fourteenth Amendments. The plaintiff asserts that "his right to be free of unreasonable search and seizure and [to be] secure in his person under the 4th Amendment, the right to due process of law under the 5th Amendment and the applicability of these Amendments to the State of West Virginia under the 14th Amendment . . . were all impaired and abridged by the actions of the Defendants acting under color of state law." (ECF No. 2 at 4).

Again, however, the Complaint fails to allege any specific conduct by the individual defendants. Furthermore, both Memoranda of Law contend as follows:

11

> The Complaint does not state with any degree of clarity whether a claim is being brought under the Due Process Clause of the Fourteenth Amendment. Perhaps the plaintiff references the Fourteenth Amendment merely as a conduit for bringing claims under the 1st, 4th and 5th Amendments. However, to the extent that a claim is raised under the 14th Amendment, those claims should be dismissed as the Complaint does not allege any conduct by any defendant that violated the constitutional protections found in that Amendment. These same facts are true for Plaintiff's claims under the 4th and 5th Amendment.

(ECF No. 12 at 10; ECF No. 14 at 11).

Turning to the plaintiff's Fifth Amendment claim, the defendants assert that the plaintiff has not identified whether he is seeking relief under the substantive or procedural protections of the Fifth Amendment; thus, the defendants further assert that they cannot ascertain whether and how their conduct is alleged to have violated that Amendment. ((ECF No. 12 at 10-11; ECF No. 14 at 16). Likewise, as to the plaintiff's Fourth Amendment claim, which appears to be based upon the filing of an allegedly "false petition" that was used for his arrest, the plaintiff has not identified who prepared and filed the petition (he does not even distinguish between the conduct of the WVDHHR defendants and that of the WVSP defendants). (*Id.*) Thus, the defendants contend that they cannot ascertain how the plaintiff claims that their individual conduct, or the specific conduct of any other person, violated the Fourth Amendment and, therefore, they cannot properly assert potential defenses to that claim. (ECF No. 12 at 11; ECF No. 14 at 12).

On these bases, each of the defendants asserts that dismissal of the Complaint for failure to state any plausible claim is appropriate under Rule 12(b)(6). The plaintiff has not responded to either Motion to Dismiss.

The undersigned agrees that the plaintiff has not sufficiently alleged plausible claims for relief under the First, Fourth, Fifth or Fourteenth Amendments to the United States Constitution against any of the defendants herein. Similarly, although not

specifically addressed by the defendants' motions, the plaintiff has not sufficiently alleged any plausible basis for relief under state law. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state a claim upon which relief can be granted against any of the defendants.

### D.     Derek Robert Glasser cannot serve as the "next friend" of C.D.G.

Finally, the defendants' motion documents assert that, to the extent that plaintiff Derek Robert Glasser has also attempted to assert claims on behalf of his minor daughter, G.D.G., as her "next friend," he is prohibited from doing so because he has a significant personal interest in the outcome of the litigation. (ECF No. 12 at 11-12; ECF No. 14 at 12-13). Both Memoranda of Law cite to West Virginia Code § 56-4-9, which provides that "[a]ny minor entitled to sue may do so by his next friend or guardian. When the action or suit is brought by his next friend, the court may, for good cause, substitute the guardian in lieu of the next friend, or any other person as the next friend." W. Va. Code § 56-4-9. (*Id.*)

The Complaint alleges that Derek Robert Glasser was the custodial parent of C.D.G. at the time of the alleged violations but, as a result thereof, C.D.G. now resides with her mother in Mexico. (ECF No. 2 at 4). The Complaint alleges, *inter alia*, that C.D.G. was subjected to a "rape kit," despite her repeated denials of any sexual abuse by her father, and has been "unreasonably deprived of the care and custody of her father" and "subjected to outrageous acts of the Defendants, humiliation and emotional distress, negligently or intentionally inflicted upon her." (*Id.* at 5). Thus, the Complaint clearly seeks additional relief on behalf of C.D.G.

The defendants' Memoranda of Law further state:

> While Mr. Glasser would be an appropriate individual to bring a claim on behalf of C.D.G. under different circumstances, he is prohibited from bringing such a claim in this lawsuit because Mr. Glasser has a personal interest in the suit by virtue of his own individual claims for damages. Under West Virginia law, "A next friend has no possible interest in the litigation. His sole place in the proceeding is to lend his own legal capacity to the infant [plaintiff's] and to assume responsibility for costs and the conduct of the suit." *Ebbert v. Westfall*, 123 W. Va. 690, 17 S.E.2d 787 789 (1941).

(ECF No. 12 at 11-12; ECF No. 14 at 13). Consequently, the defendants assert that dismissal of the claim(s) brought on behalf of C.D.G. is appropriate. Again, the plaintiff has not responded to contest this assertion.

Although pro se complaints must be liberally construed to allow the development of potentially meritorious claims, the court may not re-write the pleading to develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Even liberally construing these factual allegations and taking them as true, as the court must do when considering a Rule 12(b)(6) motion, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not stated enough facts to support any plausible claim for relief.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF Nos. 11 and 13). However, the undersigned notes that "the Fourth Circuit has stated that a court should consider granting plaintiffs, particularly *pro se* plaintiffs, leave to amend if it dismisses a complaint based on [Rule] 12(b)(6)." *Smith v. Virginia,* No. 3:08cv800, 2009 WL 2175759, at *9 (E.D. Va. July 16, 2009) (*citing Ostrzenski v. Seigel,* 177 F.3d 245, 252–53 (4th Cir.1999)).

14

> Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

*Ostrzenski,* 177 F.3d at 253. Under this authority, the undersigned proposes that the presiding District Judge specify that dismissal of this action under Rule 12(b)(6) is without prejudice or, in the alternative, consider allowing the plaintiff to file an amended complaint attempting to correct the deficiencies addressed herein within a time certain.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

<u>May 23, 2017</u>

Dwane L. Tinsley
United States Magistrate Judge